**Susan CORNETT; Katherine Jensen; John Henry; Timothy Hiser, on their own behalf and on behalf of all others similarly situated, Plaintiffs–Appellants,**

v.

**Richard DONOVAN, Director, Idaho Department of Health and Welfare; Stephen C. Weeg, Administrator, State Hospital South, in their official and individual capacities, Defendants–Appellees.**

No. 92–35255.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 4, 1993.

Decided April 7, 1995.

As Amended May 23, 1995.

Stephen L. Pevar, American Civil Liberties Union, Denver, CO, for plaintiffs-appellants.

Weldon B. Stutzman, Boise, ID, for defendants-appellees.

Before: TANG, FARRIS, and RYMER, Circuit Judges.

TANG, Senior Circuit Judge:

This is a review of a declaratory judgment in which the district court concluded that the constitutional right of access to the courts requires a state to provide legal assistance only through the pleading stage of a habeas corpus or civil rights action. The issue on appeal is whether the constitutional right of access to the courts requires a state to provide legal assistance beyond the pleading stage. We conclude that it does not.

The Supreme Court cases discussing the constitutional right of access indicate that a state need only provide assistance through the pleading stage. The right of access is designed to ensure that a habeas corpus petition or a civil rights complaint of a person in state custody will reach a court for consideration. Thereafter, the court has the discretion to request that counsel represent indigent persons when the circumstances so warrant. We affirm the judgment of the district court on the scope of the right of access.

The plaintiffs in this case, Susan Cornett, Katherine Jensen, John Henry and Timothy Hiser, are either present or former patients at Idaho State Hospital South, ("SHS") a public institution for the mentally ill owned and operated by the State of Idaho. The plaintiffs filed a complaint alleging that SHS was violating their constitutional right of access to the courts because SHS provided neither a law library nor legal assistance to handle various matters on which the plaintiffs wanted assistance, including appeals of commitment orders, a request for a protective order, and research on rehabilitation and treatment. The plaintiffs requested declaratory and injunctive relief, and plaintiff Hiser requested damages. The plaintiffs also moved to certify a class consisting of all present and future indigent SHS patients. However, the district court never ruled on the motion.

The parties entered into a partial stipulated settlement, filed on January 27, 1992. In the settlement, SHS agreed to contract with the Bingham county public defender to provide the following services:

1. Advice and counsel in regard to habeas corpus proceedings, re-examination of commitment proceedings, and civil rights;

2. Legal representation through the hearing stage of a habeas corpus or re-examination proceeding where [the public defender's office] has determined such a proceeding is meritorious.

The settlement added that SHS would not provide payment to the public defender in civil rights actions beyond preparation of an initial pleading.[1]

The settlement stated that all of plaintiffs' claims were abandoned except for the legal issue of "the scope of the constitutional right of access as identified in Plaintiffs' Reply to Defendants' Amended Motion for Summary Judgment ... and Defendants' Reply Memorandum in Support of Amended Motion for Summary Judgment...." Each of these documents states the legal issue somewhat differently.

In an order filed on February 4, 1992, the district court determined the issue to be whether the constitutional right of access to the courts required SHS to provide legal assistance beyond the pleading stage of a habeas corpus or civil rights action. The court concluded that the duty to provide assistance ceased upon the filing of a habeas petition or civil rights complaint or upon the

---

1. Defendants point out that Legal Aid and Idaho Coalition of Advocates provide some legal assistance to the institutionalized mental patients. However, defendants do not dispute that, under the settlement agreement, SHS will not provide assistance past the pleading stage in civil rights actions, or past the hearing stage in habeas actions.

filing of a reply to a responsive pleading when such a reply is ordered by the court. Because the district court required assistance through the filing of a reply to a responsive pleading, we interpret the district court judgment to mean that assistance is required through the pleading stage.

## I. The Issue on Appeal

The parties disagree about the precise issue on appeal. As stated above, the stipulated settlement refers to the issue as set forth in "Plaintiffs' Reply to Defendants' Amended Motion for Summary Judgment ... and Defendants' Reply Memorandum in Support of Amended Motion for Summary Judgment...." Each of these documents, however, describes the legal issue somewhat differently. Plaintiffs' Reply states the issue is "whether the constitutional right of access to the courts extends beyond the pleading stage." On appeal, plaintiffs state the issue is the scope of the right of access in both habeas and civil rights actions. Defendants' Reply phrases the issue more narrowly as "[w]hether the constitutional right of access requires [SHS] to pay for legal services beyond the initial pleading stage in civil rights lawsuits."

This appeal asks us to determine whether the constitutional right of access requires that SHS provide legal assistance to an institutionalized person only at the pleading stage or through a later stage, conceivably even through final disposition of a cause of action. SHS did not agree to provide legal representation through the final disposition of either civil rights or habeas corpus actions. Therefore, the settlement agreement does not moot the question of the scope of the right of access with respect to habeas corpus. The issue on appeal is the scope of the constitutional right of access to court in both habeas corpus and civil rights actions.

## II. Standing

■ Four plaintiffs brought this suit.[2] To establish standing, the plaintiffs must

show 1) injury in fact, 2) that the injury is traceable to the challenged action, and 3) that it is likely the injury will be redressed by the relief requested. *Seattle Audubon Soc'y v. Espy*, 998 F.2d 699 (9th Cir.1993). Plaintiff Hiser was no longer institutionalized at the time plaintiffs filed the complaint. He fails part three of the standing test because his injury, lack of access to court while he was institutionalized, would not be redressed by the declaratory relief requested.

■ The remaining plaintiffs have standing to pursue this action. At the time plaintiffs filed this cause of action, SHS had not agreed to provide either a law library or legal assistance. Plaintiffs suffered the injury of denial of resources required to guarantee their right of access to court. The partial settlement does not eliminate plaintiffs' standing to raise the issue of whether SHS has now provided all the resources necessary to guarantee the right of access. *See Peterkin v. Jeffes*, 855 F.2d 1021, 1041 n. 25 (3d Cir.1988) (plaintiff's demonstration of an instance of actual denial of access is not a standing requirement).[3]

## III. The Right of Access

■ Prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977). The right of access is grounded in the Due Process and Equal Protection Clauses. *Murray v. Giarratano*, 492 U.S. 1, 6, 109 S.Ct. 2765, 2771, 106 L.Ed.2d 1 (1989). To ensure meaningful access, states have the affirmative obligation to provide inmates with "adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828, 97 S.Ct. at 1498.

■ The right of access is guaranteed to people who are involuntarily committed to a mental institution. *King v. Atiyeh*, 814 F.2d 565, 568 n. 2 (9th Cir.1987). The right is not limited to people who are committed follow-

---

2. In supplemental briefs on the issue of standing, plaintiffs argue that the case should be treated as a class action. The district court never ruled on the motion to certify a class consisting of the named plaintiffs and all other SHS patients, both present and future, who need, or who in the future may need, adequate access to the courts. However, class certification does not affect the issue of standing because the claims or defenses of the representative parties must be typical of claims or defenses of the class. *See* Fed.R.Civ.P. 23(a). Thus, if the representative parties do not have standing, the class does not have standing.

3. SHS has informed the panel that two of the three remaining plaintiffs are no longer institutionalized. Because at least one plaintiff remains institutionalized, we need not determine whether release during appeal affects standing.

ing criminal proceedings. The right of access helps ensure that the unlawfully detained obtain their freedom, *Johnson v. Avery*, 393 U.S. 483, 485, 89 S.Ct. 747, 749, 21 L.Ed.2d 718 (1969), and that the lawfully detained have recourse for violation of fundamental constitutional rights. *Wolff v. McDonnell*, 418 U.S. 539, 579, 94 S.Ct. 2963, 2986, 41 L.Ed.2d 935 (1974). These concerns are adequately addressed only if the right of access is guaranteed to people institutionalized in a state mental hospital regardless of whether they are civilly committed after criminal proceedings or civilly committed on grounds of dangerousness. Therefore, we conclude that the institutionalized patients at SHS have a constitutional right of access to the courts.[4]

We have not previously addressed whether the right of access requires that the state provide institutionalized persons with legal assistance beyond the pleading stage of a case. Plaintiffs argue that the right of access must extend beyond the pleading stage because institutionalized mental patients will have difficulty prosecuting their claims. Defendants argue that the right of access encompasses only the right to a law library or legal assistance at the pleading stage.

Our analysis begins with the Supreme Court cases that have discussed the right of access to the courts. In the most direct statement on the subject, the Supreme Court has stated that "the Fourteenth Amendment due process claim based on access to the courts ... has not been extended by this Court to apply further than protecting the ability of an inmate to prepare a petition or complaint." *Wolff*, 418 U.S. at 576, 94 S.Ct. at 2984. The Court expanded the substantive claims encompassed within the right of access, concluding that inmates have the right to assistance with civil rights actions. *Id.* at 579, 94 S.Ct. at 2986. However the Court did not extend the scope of the right of access to require assistance with portions of the cause beyond the pleadings, stating only that inmates had the right to *"present* to the judiciary *allegations* concerning [civil rights

violations]." *Id.* (emphasis added). The Court added that inmates' rights would lose meaning if they "were unable to *articulate their complaints* to the courts." *Id.* (emphasis added).

In the leading case on the right of access, the Supreme Court continued to state that its "main concern" was "'protecting the ability of an inmate to *prepare a petition or complaint.'"* *Bounds*, 430 U.S. at 828 n. 17, 97 S.Ct. at 1498 n. 17 (quoting *Wolff*, 418 U.S. at 576, 94 S.Ct. at 2984) (emphasis added). Other portions of the Court's discussion in *Bounds* also indicate that the Court did not intend to expand the right of access past the pleading stage. According to the Court, a law library or legal assistance was necessary to formulate "a habeas corpus *petition* or civil rights *complaint."* 430 U.S. at 825, 97 S.Ct. at 1496–97 (emphasis added). The Court added that a competent lawyer would not "file an *initial pleading"* without researching a number of issues, including the facts necessary to "state a cause of action." Id., 430 U.S. at 825, 97 S.Ct. at 1497. The Court later reiterated that legal research or advice was necessary "to make a meaningful *initial presentation"* to a trial court. *Id.* at 828, 97 S.Ct. at 1498 (emphasis added). Finally, the Court held the right of access required that prisons assist inmates "in the preparation and filing of meaningful legal papers." *Id.*

▮ Considering the Court's discussion in *Wolff* and *Bounds* in totality, we conclude the Supreme Court has clearly stated that the constitutional right of access requires a state to provide a law library or legal assistance only during the pleading stage of a habeas or civil rights action. The Supreme Court has delineated the stages of litigation for which the right of access requires assistance and we are not free to expand the scope of the right beyond these limits.

One portion of *Bounds* mentions the possibility that an inmate would need to rebut responsive pleadings:

> [I]f the State files a response to a *pro se* pleading, it will undoubtedly contain seemingly authoritative citations. Without a library, an inmate will be unable to rebut

4. Our conclusion is consistent with the decisions of other circuits, which have found a right of access for other groups of people in state custody. *See John L. v. Adams*, 969 F.2d 228, 233 (6th Cir.1992) (right of access for juveniles); *Matzker*

*v. Herr*, 748 F.2d 1142 (7th Cir.1984), *overruled in part on other grounds, Salazar v. City of Chicago*, 940 F.2d 233, 240 (7th Cir.1991) (right of access for pretrial detainees).

the State's argument.... Even the most dedicated trial judges are bound to overlook meritorious cases without the benefit of an adversary presentation.

430 U.S. at 826, 97 S.Ct. at 1497.

Referencing this discussion in *Bounds*, the Fifth Circuit has stated that the right of access is not limited to the ability to file, because meaningful access requires that a state provide inmates with post-filing research assistance necessary to rebut authority cited in responsive pleadings. *Morrow v. Harwell*, 768 F.2d 619, 623 (5th Cir.1985). That is, the right of access "includes the ability to file a legally sufficient claim." *Id.* However, the court made this point only in a general background discussion of the right of access.

The cited discussions in *Bounds* and *Morrow* are easily reconciled with our decision that the right of access requires that the state provide assistance only through the pleading stage. The pleading stage does not encompass merely the complaint and the answer. A court may order a reply to an answer. Fed.R.Civ.P. 7. Further, the pleadings include a reply to a counterclaim and an answer to a cross-claim. *Id.* Because the right of access to the court requires assistance through the pleading stage, the right requires that the state provide assistance if a defendant raises a counterclaim or cross-claim, or the court orders a reply. Requiring assistance throughout the pleading stage enables the inmate to rebut the State's arguments when a court determines that a rebuttal would be of assistance. The inmate thus receives the full assistance necessary to "file a legally sufficient claim."

This conclusion is consistent with a Fifth Circuit decision subsequent to *Morrow*, stating:

> [T]he Constitution does not require the government to provide inmates with attorneys to represent them in their civil actions, and *Bounds* cannot have meant to require legal assistance equivalent to the provision of a lawyer.... Extending the right [to require assistance with filing a legally sufficient claim] is manageable ... because a court can examine the record

and determine, as a threshold question, whether a legally sufficient claim was filed.

*Mann v. Smith*, 796 F.2d 79, 84 (5th Cir. 1986).

■ Our conclusion, that the right of access does not require that a state provide assistance beyond the pleading stage, distinguishes between the constitutional right of access to the courts and the constitutional right to counsel. The right of access is a right of "access" and not of "representation." *Knop v. Johnson*, 977 F.2d 996, 1006 (6th Cir.1992), *cert. denied, Knop v. McGinnis,* — U.S. ——, 113 S.Ct. 1415, 122 L.Ed.2d 786 (1993). The right of access is designed to ensure that a habeas petition or a civil rights complaint of a person in state custody will reach a court for consideration. Once the claim reaches a court, an indigent institutionalized person is in the same position as an indigent noninstitutionalized person filing, for example, a civil rights claim. *Hooks v. Wainwright*, 775 F.2d 1433, 1436 (11th Cir. 1985), *cert. denied*, 479 U.S. 913, 107 S.Ct. 313, 93 L.Ed.2d 287 (1986). The court can determine whether the claim warrants appointment of counsel to represent the plaintiff. If so, the court may request an attorney to represent an indigent plaintiff. 28 U.S.C. § 1915(d); *Knop*, 977 F.2d at 1007.

■ The plaintiffs argue that the right of access should encompass a right to representation in court because mental patients may not be able to prosecute their claims effectively. At the pleading stage, the right of access requires provision of attorneys or legal assistants, rather than law libraries, for institutionalized persons who lack the capacity to research the law independently. *See Casey v. Lewis*, 43 F.3d 1261, 1267–68 (9th Cir.1994) (legal assistants, rather than law libraries, must be provided to functionally illiterate and non-English speaking inmates); *see also, Knop*, 977 F.2d at 1005 (law libraries inadequate for persons who "lack the intelligence necessary to prepare coherent pleadings"); *John L.*, 969 F.2d at 234 (right of access requires that incarcerated juveniles be provided access to an attorney). While a state may have to provide a legal assistant

for a patient who lacks capacity to research, lack of capacity does not justify expansion of the right of access to include a right of representation in court.[5]

Assistance through the pleading stage is a substantial amount of help for mental patients institutionalized at SHS. A competent lawyer drafting a complaint will research "such issues as jurisdiction, venue, standing, exhaustion of remedies, proper parties plaintiff and defendant, and types of relief available." *Bounds,* 430 U.S. at 825, 97 S.Ct. at 1497. Further, the lawyer "must know what the law is in order to determine whether a colorable claim exists, and if so, what facts are necessary to state a cause of action." *Id.*

Our conclusion is consistent with the decisions of several other circuit courts. The Tenth Circuit has held that the right of access requires assistance through completion of a habeas or civil rights complaint. *Nordgren v. Milliken,* 762 F.2d 851, 855 (10th Cir.), *cert. denied,* 474 U.S. 1032, 106 S.Ct. 593, 88 L.Ed.2d 573 (1985). *See also Bee v. Utah State Prison,* 823 F.2d 397, 398 (10th Cir.1987). The Sixth Circuit is in agreement. *See Knop,* 977 F.2d at 1006. Our conclusion is also consistent with the general discussion of the right of access, contained in a prior decision of this court, as well as a decision of the First Circuit. *See Casey,* 43 F.3d at 1268 (citing *Knop,* 977 F.2d at 1006) (meaningful access to judicial system requires reduction of inmates' stories to "intelligible written pleadings"); *Carter v. Fair,* 786 F.2d 433, 435 (1st Cir.1986) (right of access requires that state assist inmate with preparation of a petition or complaint). We have added only that the right of access requires the state to provide assistance through the pleading stage, including preparation of a reply to an answer, cross-claim or counterclaim.

5. The other case on which plaintiffs rely is not inconsistent with our decision. In *Bonner v. Prichard,* 661 F.2d 1206, 1212 (11th Cir.1981) (en banc), the Eleventh Circuit held that the right of access to court is violated when the court dismisses a case, on the grounds that a prisoner can refile after release from custody, without even considering jurisdiction and the adequacy

For the reasons discussed above, the judgment of the district court is **AFFIRMED.**

of the complaint. *Id.* Although the Eleventh Circuit stated the right of access is not limited to assistance with preparation of pleadings, the court did not suggest that the prisoner was entitled to further legal assistance. Rather, the court merely held that the district court had to consider the pleadings that had been filed.